

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00141-CV

**IN THE INTEREST OF J.L.W.**, a Child

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-PA-01086
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: September 22, 2021

AFFIRMED

B.O. appeals the trial court's order terminating her parental rights to her child J.L.W. (born 2019).[1] B.O. argues the evidence is legally and factually insufficient to support the trial court's findings under Texas Family Code section 161.001(b)(1). We affirm.

### BACKGROUND

On June 1, 2020, the Texas Department of Family and Protective Services removed J.L.W. after receiving referrals alleging drug use by both parents and domestic violence, including one incident in which J.L.W. was allegedly used by B.O. as a shield. The Department obtained temporary managing conservatorship over J.L.W., placed J.L.W. in a foster home, and filed a

---

[1] To protect the privacy of the minor child, we use initials to refer to the child and his biological parents. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

petition to terminate B.O.'s parental rights. The Department also created a family service plan requiring B.O. to, inter alia, attend individual therapy, seek psychiatric treatment, attend parenting classes, complete a psychological evaluation, provide proof of housing and employment, and submit to random drug testing as a condition of reunification. The Department ultimately pursued termination of B.O.'s parental rights.

On March 4, 2021, approximately nine months after removal, the trial court held a one-day bench trial. The trial court heard testimony from three witnesses: (1) the Department's caseworker Glory Bishop (Bishop); (2) the appellant, B.O.; and (3) the father, M.W. At the conclusion of trial, the court signed an order terminating B.O.'s parental rights pursuant to section 161.001(b)(1)(N) (constructive abandonment), (O) (failure to comply with provisions of court order), and (P) (use of a controlled substance in a manner endangering child's health or safety) and made a finding that termination of B.O.'s parental rights was in the best interests of J.L.W.[2] On appeal, B.O. challenges the legal and factual sufficiency of the evidence supporting the trial court's predicate findings under section 161.001(b)(1).

## STANDARD OF REVIEW

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate B.O.'s parental rights and

---

[2] Although M.W. did not appeal, the trial court also terminated his parental rights.

that termination was in the best interests of the children. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id.* at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed

evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

**STATUTORY TERMINATION GROUNDS**

*Applicable Law*

In her sole argument on appeal, B.O. challenges the legal and factual sufficiency of the evidence to support the trial court's predicate findings under subsections N, O, and P. When, as here, the trial court terminates a parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d at 362; *In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—San Antonio 2012, no pet.).

To terminate parental rights under section 161.001(b)(1)(O), the trial court must find, by clear and convincing evidence, that the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department [] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." TEX. FAM. CODE § 161.001(b)(1)(O). "Texas courts have held that substantial compliance is not enough to avoid a termination finding under section 161.001(O)." *In re C.A.*, No. 04-15-00582-CV, 2016 WL 805550, at *5 (Tex. App.—San Antonio Mar. 2, 2016, pet. denied) (mem. op.).

*Application*

After J.L.W.'s removal, the trial court incorporated the Department's family service plan into a court order. As a condition of reunification, B.O. was asked to attend individual therapy; take parenting classes; complete a psychiatric or psychological evaluation; provide proof of housing and employment; and submit to random drug testing and assessment. Bishop testified she communicated the requirements of the court-ordered service plan, in addition to service referrals, through a phone call, text message, and email in June of 2020.

At trial, Bishop outlined that B.O. was not compliant with the family service plan, other than completing the psychological evaluation. According to Bishop, B.O. made no efforts to comply with requirements for drug treatment, therapy, or domestic violence classes. Nor did B.O. attend parenting classes, which are readily available for online attendance. B.O. also failed to maintain communication with the Department after removal, making it difficult to verify proof of stable housing or employment.

Additionally, Bishop testified that B.O. admitted to using methamphetamines, and on September 23, 2020, B.O. tested positive for amphetamines and methamphetamines. She was arrested twice for separate drug-related charges in November 2020—during the pendency of the case. After testing positive, B.O. denied use and theorized that she tested positive because she was around people that "probably" used drugs, causing her to be positive; however, there is uncontroverted testimony this is not a possible explanation for the hair follicle tests administered to B.O.

B.O. does not dispute that her child was in the Department's custody for at least nine months at the time of trial. Instead, she argues she did not complete her service plan for reasons outside of her control. B.O. testified she told Bishop to communicate with her by email but did not receive emails from the Department "probably" until three or four months after J.L.W.'s removal

because Bishop's emails "were going to my spam." She also testified that she was on a waiting list to start engaging in services and maintained stable housing. She denied current drug use, although at the removal stage she had admitted to using methamphetamines; she tested positive for amphetamines and methamphetamines approximately four months before trial; and she missed subsequently scheduled drug tests. She testified she missed additional drug test appointments because they conflicted with her work, although she never provided evidence of employment to the Department, which was another condition of her family service plan.

It is undisputed that B.O. failed to complete certain terms of her court-ordered family service plan. After reviewing the evidence under the appropriate standards of review, we conclude that a factfinder could reasonably have formed a firm belief or conviction that B.O. failed to comply with all the terms of a court-ordered service plan. We therefore hold legally and factually sufficient evidence supports the trial court's finding that B.O. violated section 161.001(b)(1)(O), and overrule her arguments to the contrary.

## CONCLUSION

Because there is legally and factually sufficient evidence of at least one predicate ground supporting termination, we affirm the trial court's order of termination.

Lori I. Valenzuela, Justice